IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

KYLE O'DONNELL and LISA                )
MATTESON, Individually and on          )        JURY TRIAL DEMANDED
Behalf of All Others Similarly Situated, )
                                       )
Plaintiffs,                            )
                                       )        Case No. 4:11-CV-01107-CEJ
v.                                     )
                                       )
SOUTHWESTERN BELL YELLOW               )
PAGES, INC. d/b/a AT&T ADVERTISING     )
SOLUTIONS                              )
                                       )
Defendant.                             )

MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND
CERTIFICATION OF SETTLEMENT CLASS PURSUANT TO FED. R. CIV. P. 23(E)

The parties have moved for an order:  (1) preliminarily approving a class

action settlement pursuant to Fed. R. Civ. P. 23(e) and a collective action

settlement pursuant to 29 U.S.C. § 216(b); (2) preliminarily certifying plaintiffs'

claims under the Missouri Minimum Wage Law as a class action under Fed. R.

Civ. P. 23 pursuant to the terms of the parties' settlement agreement; (3)

appointing plaintiffs' counsel as Class Counsel pursuant to Fed. R. Civ. P 23(g);

and (4) approving the form and manner of notice to the proposed classes.  The

parties respectfully submit that their proposed settlement is a fair and reasonable

resolution of this litigation and permits the certification of a class for settlement

purposes under Fed. R. Civ. P. 23.  The parties accordingly request that the Court grant their motion.

I.      BACKGROUND

    A.      Procedural History

Plaintiffs Kyle O'Donnell and Lisa Matteson filed this litigation on June 20, 2011, alleging violations of the FLSA and Missouri Minimum Wage Law.  (*See* Dkt. No. 1.)  Specifically, plaintiffs alleged that they were not paid for all hours worked because defendant Southwestern Bell Yellow Pages, Inc. ("SWBYP" or "defendant") had not compensated them for certain pre- and post-shift activities and various other tasks they performed as "cyber sales representatives" at defendant's call centers in St. Louis and Olivette, Missouri.  (*Id.* ¶¶ 1, 8, 14-18.) Plaintiffs brought their FLSA claims on their own behalf and on behalf of all other "similarly situated" employees pursuant to the FLSA's collective action provision, 29 U.S.C. § 216(b).  (*Id.* ¶ 2.)  They also alleged that their claims under the Missouri Minimum Wage Law should be certified pursuant to Fed. R. Civ. P. 23. (*Id.*)

On November 22, 2011, plaintiffs moved the Court for an order conditionally certifying their FLSA claims as a collective action under 29 U.S.C. § 216(b) and directing that notice of these claims be sent to approximately 500 current and former cyber sales representatives that worked in the St. Louis and

Olivette call centers since May 17, 2009.  (*See* Dkt. No. 25.)  The Court granted

plaintiffs' motion on May 17, 2012.  (*See* Dkt. No. 32.)  In response to the Court-

ordered notice, 178 putative class members filed consents to join this litigation.

(*See* Dkt. Nos. 5, 38, 40-42, 50.)

The parties have engaged in significant discovery since the filing of

plaintiffs' complaint.  Defendant has deposed the two named plaintiffs and the

parties exchanged various documents and information in advance of the filing of

plaintiffs' motion for conditional FLSA certification.  (See Exhibit A, Declaration

of Derek Braziel ("Braziel Decl.") ¶ 10.)  Following the Court's order approving

notice pursuant to 29 U.S.C. § 216(b), the parties each served substantial written

discovery and defendant provided plaintiffs with payroll data regarding the hours

worked and compensation paid to the putative class.  (*Id.*)

On December 20, 2012, the parties participated in mediation before mediator

Hunter R. Hughes in Atlanta, Georgia.  (Braziel Decl. ¶ 11.)  The parties did not

reach agreement at the mediation session on December 20, but they continued to

negotiate regarding the terms of a possible settlement.  (*Id.*)  On January 9, 2013,

the parties agreed in principle to a class-wide settlement of plaintiffs' claims,

subject to the negotiation of various non-monetary terms and the agreement

receiving final approval from the Court.  (*Id.*)  The Settlement Agreement and

accompanying exhibits are attached as Exhibit B to this Motion.

3

B.     Terms Of The Proposed Settlement Agreement

The settlement agreement provides for two sub-classes.  The first settlement class—the "FLSA Subclass"—includes all individuals who filed consents to join this litigation pursuant to 29 U.S.C. § 216(b).  (*See* Braziel Decl. ¶ 12 and Ex. B.)  The second settlement class—the "Rule 23 Subclass"—includes all current and former SWBYP "cyber sales representatives" who did not otherwise file a consent to join this litigation, but worked in the company's St. Louis or Olivette call centers between May 17, 2009 and the date the Court gives preliminary approval to the settlement agreement.  (*Id.*)

The settlement provides that defendant will pay a total amount of up to $1.1 million in settlement payments and attorneys' fees and costs to the two settlement subclasses.  (Braziel Decl. ¶ 13.)  This is the maximum amount defendant is obligated to pay under the settlement.  After the deduction of modest enhancements for the two named plaintiffs and any attorneys' fees and costs approved by the Court, the remaining amount will be made available to the FLSA and Rule 23 subclasses and paid on a claims-made basis.  (*Id.* ¶ 13.)  Of the remaining amount, 40 percent will be made available to the 178 individuals in the FLSA Subclass and 60 percent will be made available to the approximately 320 individuals in the Rule 23 Subclass.  (*Id.* ¶ 13.)

Members of the FLSA and Rule 23 Subclasses will be entitled to claim a proportionate share of their respective settlement fund based upon the number of qualifying workweeks, at their variable rates of pay, they worked as a cyber sales representative in the St. Louis or Olivette call centers.  (Braziel Decl. ¶ 14.)  Class members will have 60 days from the issuance of notice of preliminary approval of the settlement to claim their settlement amount.  (*Id.*)  A third-party claims administrator will send notice of the preliminary settlement and a claim form to each class member using their last known address.  (*Id.*)  The administrator will conduct a search of a nationwide database for the updated addresses of any individual whose notice is returned as undeliverable.  (*Id.*)

All class members will have the opportunity to opt-out of the settlement agreement or file objections to the agreement with the Court.  (Braziel Decl. ¶ 15.)  The settlement permits class members 45 days to opt-out or file objections.  (*Id.*)  Following the close of the opt-out and objection periods, the parties request that the Court conduct a final fairness hearing on their settlement.  (*Id.* ¶ **15**.)  If the Court finally approves the settlement, the claims of all class members who did not opt-out of the litigation will be dismissed with prejudice and each class member who submitted a claim form will be mailed their proportionate share of the settlement fund by the third-party settlement administrator.  (*Id.*)  The costs of the settlement administrator will be paid from any unclaimed settlement funds.  (*Id.*)

If the costs exceed the amount of any unclaimed funds, defendant will pay the remaining balance.  (*Id.*)

Pursuant to the settlement agreement, plaintiffs' counsel may seek attorneys' fees and costs of up to one-third of the total amount of the settlement.  (Braziel Decl. ¶ 16.)  Defendant does not oppose this request.  (*Id.*)  The total attorneys' fees and costs actually paid will be approved by the Court in its final order approving the settlement.  (*Id.*)

II.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

A.   Preliminary Approval Standards

"The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *Cohn v. Nelson,* 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005); *see also, e.g., Little Rock Sch. Dist. v. Pulasky County Special Sch. Dist. No. 1,* 921 F.2d 1371, 1383 (8th Cir. 1990) ('The law strongly favors settlements.  Courts should hospitably receive them.").  Because "'[a] strong public policy favors [settlement] agreements,… courts should approach them with a presumption in their favor'"  *See, e.g., Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1148 (8th Cir. 1999) (citation omitted).  As a result of these policy considerations, class action settlements that are "the product of arm's length negotiations" enjoy an initial presumption that they are "fair and reasonable."  *Wineland v. Casey's General Stores, Inc.,* 267 F.R.D. 669, 677 (S.D. Iowa 2009).

Federal Rule of Civil Procedure 23(e) requires judicial approval of a class settlement.  "Review of a proposed class action settlement generally involves two hearings."  Manual for Complex Litigation, Fourth § 21.632 (2011).  First, "counsel submit the proposed terms of

6

settlement and the judge makes a preliminary fairness evaluation." *Id.*  The district court reviews

whether, as a preliminary matter, the proposed settlement is "fair, reasonable, and adequate." *Id;*

*see also* Fed. R. Civ. P. 23(a)(2).  If a class has not already been certified, the district court also

makes a preliminary determination as to whether class certification is appropriate. *See* Manual

for Complex Litigation § 21.632 ("If the case is presented for both class certification and

settlement approval, the certification hearing and preliminary fairness evaluation can usually be

combined."); *see also, e.g., Risch v. Natoli Engineering Co. LLC,* No. 4:11CV1621 AGF, 2012

WL 3242099 at *2-4 (E.D. Mo. Aug. 7, 2012) ("*Risch I*") (preliminarily approving settlement

and class certification in unpaid overtime lawsuit under Missouri Minimum Wage Law).

"Once the judge is satisfied as to the certifiability of the class and the results of the initial

inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule

23(e) fairness hearing is given to the class members."  Manual for Complex Litigation § 21.633;

*see also* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all

class members who would be bound by the proposal.").  After notice has been provided, the

district court conducts a fairness hearing at which it makes a final determination as to whether

the settlement is "fair, reasonable, and adequate." *See* Manual for Complex Litigation § 21.634;

Fed. R. Civ. P. 23(e)(2).

Where, as here, class action claims under Rule 23 are combined with FLSA collective

action claims under 29 U.S.C. § 216(b), the parties also may seek approval of settlement

payments to those individuals who have affirmatively opted-in to the litigation. *See, e.g., Risch*

*v. Natoli Engineering Co. LLC,* No. 4:11CV1621 AGF, 2012 WL 4357953 at *1-2 (E.D. Mo.

Sept. 24, 2012) ("*Risch II*") (describing process for settlement of combined collective action

under FLSA and class action under Missouri Minimum Wage Law).  Courts in this district have

held that settlement of a FLSA collective action may be approved after the district court has

"scrutinized the settlement for fairness." *Risch II*, 2012 WL 4357953 at *1-2. When making this

determination, the district court applies factors similar to those in the Rule 23 context. *Id.* at *1

("To determine whether the settlement is fair and reasonable under the FLSA, the Court

considers the fairness factors typically applied to a class action certified under Federal Rule of

Civil Procedure 23.").

The parties request that the Court take the first step and grant preliminary approval and

certification of this action as a class action under Rule 23. At this stage, preliminary approval is

"at most a determination that there is what might be termed 'probable cause' to submit the

proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec.*

*Ass'n E.R.R.,* 627 F.2d 631, 634 (2d Cir. 1980). The parties respectfully submit that this

standard is easily met here.

B.      The Proposed Settlement Is Fair, Reasonable And Adequate

The Eighth Circuit has identified four factors in determining whether a settlement is fair,

reasonable, and adequate: "(1) the merits of the plaintiff's case, weighed against the terms of the

settlement; (2) the defendant's financial condition; (3) the complexity and expense of further

litigation; and (4) the amount of opposition to the settlement."[1] *In re Wireless Tel. Fed. Cost*

*Recovery Fess Litig.,* 396 F.3d 922, 932 (8th Cir. 2005). In addition to these four factors, courts

within this Circuit have recognized "two additional, overarching principles." *Grove v. Principal*

---

[1] There is no evidence that defendant's financial condition would prevent the company from satisfying a judgment in this litigation, and thus this factor is not relevant here. *See Risch I,* 2012 WL 3242099 at *3 (preliminarily approving class settlement where "[t]here has been no indication that Defendants would be unable to pay, or incur undue hardship as a result of, the settlement"). Similarly, the Court need not assess the "amount of opposition to the settlement" in deciding the parties' request for preliminary approval. This factor is only relevant after notice of the settlement has been provided to the putative class and the parties seek final approval of the settlement.

*Mut. Life Ins. Co.,* 200 F.R.D. 434, 445 (S.D. Iowa 2001).  First, "a settlement that is the product of arm's length negotiations conducted by experienced counsel is presumed to be fair and reasonable."  *Id.*  Second, a "Court 'should not substitute [its] own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.'"  *Id.* (quoting *Petrovic,* 200 F.3d at 1148-49).

The parties' settlement is entitled to preliminary approval under these standards. Plaintiffs' claims are based on the contention that they were not paid for certain time spent starting and shutting down their computers, and for other time they allegedly continued sales calls past their scheduled shift but did not record their time.  (*See, e.g.,* Dkt. No. 1 ¶¶ 15-16.) Several issues remain to be determined—including whether defendant had knowledge of plaintiffs' alleged "off-the-clock" work and the extent to which any uncompensated time spent logging on and off computers was *de minimis*.  The outcome of these issues is uncertain and would require extensive litigation.  *See, e.g., Burch v. Qwest Comm. Int'l, Inc.,* 677 F. Supp. 2d 1101 (D. Minn. 2009) (denying motion for summary judgment on plaintiffs' claim that call center workers were denied overtime when paid based on scheduled time; issues of fact existed as to whether employer had knowledge of additional work time); *Fast v. Applebee's Int'l, Inc.,* 502 F. Supp. 2d 996 (W.D. Mo. 2007) (finding some pre-shift working time *de minimis* and other time not *de minimis*; issues of fact existed regarding whether employer had knowledge of unpaid pre-shift work because orders were placed by employees during pre-shift period).

The ability of plaintiffs to maintain this case as a class and collective action after the parties conduct further discovery also is undetermined.  *Compare, e.g., Burch,* 677 F. Supp. 2d at 1101 (certifying class of call center workers for overtime claims based on boot-up and boot-down of computers, but denying class and collective action certification for other claims of "off

the clock" work); *with Underwood v. NMC Mort. Corp.,* No. 07-2268-EFM, 2009 WL 1322588

at *1-5 (D. Kan. May 11, 2009) (refusing to decertify "off the clock" case based on allegations

that employees were paid only for scheduled time); *and Brechler v. Qwest Comm. In'tl, Inc.,* No.

cv-06-00940-PHX-ROS, 2009 WL 692329 (D. Ariz. Mar. 17, 2009) (decertifying collective

claims of call center employees alleging "off the clock" work).

The proposed settlement is a reasonable compromise in light of these issues.  Although

the final amounts distributed to individual class members cannot be determined until notice has

been provided and class members have been given the opportunity to opt-out, the parties

estimate that the settlement fund will provide class members payments that would approximate

at least the amount of overtime due if they worked a half-hour of uncompensated time each

workweek during their tenure.  Although both parties believe they could receive a more

favorable result at trial, "[t]he essence of settlement is compromise… a solution somewhere

between the two extremes."  *Alliance to End Repression v. City of Chicago,* 561 F. Supp. 537,

548 (N.D. Ill. 1982).  The proposed settlement "will provide plaintiffs with the certainty of [this]

monetary payment now as opposed to having to wait a significantly longer period of time if the

case were to go to trial and face the possibility that there might be no recovery…."  *Shackleford

v. Cargill Meat Sol. Corp.,* No. 12-CV-4065-FJG, 2013 WL 209052 at *3 (W.D. Mo. Jan. 17,

2013).

The likelihood of protracted and expensive additional proceedings also supports

preliminary approval.  This case was filed in June 2011.  The parties face the prospect of an

extended period of class-wide and merits discovery, followed by substantial motions practice on

dispositive issues and class and collective action certification.  Under the Court's current case

management schedule, trial is scheduled for December 2013.  When the likelihood of appeals are

considered, plaintiffs likely will not receive any recovery until 2015, if they prevail at all.  This prospect of "significant further litigation" supports the reasonableness of the settlement reached by the parties.  *Petrovic,* 200 F.3d at 1150-52 (prospect of a "trial projected to last at least a few weeks and … the inevitable appeals" supported reasonableness of settlement); *see also, e.g., Holden v. Burlington N. Inc.,* 665 F. Supp. 1398, 1402 (D. Minn. 1997) (immediate relief afforded to class members under settlement supported reasonableness of settlement).

Finally, other factors demonstrate that the settlement is a fair resolution of plaintiffs' claims.  Plaintiffs are represented by experienced counsel that are experts in wage and hour litigation and will receive reasonable attorneys' fees and expenses as part of the settlement.  *See, e.g., Wineland,* 267 F.R.D. at 676 (experience of plaintiffs' counsel and provision for "reasonable attorneys' fees and expenses" supported reasonableness of settlement).  That the parties already have engaged in meaningful discovery and the absence of any fraud or collusion in the settlement, which was negotiated with the assistance of an experienced mediator, further support a finding that the settlement is reasonable.  *Shackleford,* 2013 WL 209052 at *2-3.

The parties' proposed settlement thus easily meets the requirement that it be "within the range of possible approval" to justify preliminary approval and notice to the putative class under Rule 23(e).  *See* Manual for Complex Litigation § 40.42 (model order); *In re Traffic Exec. Ass'n E.R.R.,* 627 F.2d at 634.  The Court therefore should grant the parties' joint motion and approve the issuances of the notices attached hereto as Exhibits A-D of the Settlement Agreement.

III.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The parties also request that the Court certify the claims of the Rule 23 Subclass as a class action under Rule 23 for settlement purposes.  It is well-accepted that class actions may be certified for the purpose of settlement.  *See, e.g.,*

11

*DeBoer v. Mellon Mtg. Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995).  To be certified for purposes of settlement, the proposed class must meet each of the requirements of Rule 23(a): numerosity; commonality; typicality; and adequacy of representation.  The settlement class must also meet one of the requirements of Rule 23(b).  These standards are met here.

A.    Numerosity

The proposed class meets the numerosity requirement of Rule 23(a).  The numerosity requirement may be met in classes with as few as twenty members.  *See, e.g., Paxton v. Union Nat'l Bank of Little Rock,* 688 F.2d 552, 561 (8th Cir. 1982) (18 class members met numerosity requirement).  The Rule 23 Subclass consists of more than 300 members, thus easily satisfying the numerosity requirement.  (*See* Braziel Decl. ¶ 22.)

B.    Commonality

The settlement class also satisfies the commonality requirement of Rule 23(a)(2).  "The rule does not require that every question of law or fact be common to every member of the class…."  *Paxton,* 688 F.2d at 561.  Plaintiffs have alleged common claims and factual circumstances relating to the Rule 23 Subclass.  First, plaintiffs assert the same claim, violations of the Missouri Minimum Wage Law, on behalf of each class member.  (Dkt. No. 1, ¶ 8.)  Second, all of the class members worked in the position of cyber sales representative at either SWBYP's Olivette or St. Louis call centers.  (*Id.*)  Third, all of the class members were classified as non-exempt and eligible for overtime pay to the extent they worked over 40 hours in a workweek.  (*Id.* ¶ 18.)  Finally, plaintiffs allege that all class members were denied overtime compensation for certain pre- and post-shift work during their tenure as cyber sales representatives.  (*Id.* ¶¶ 15-18, 31.)  These issues are sufficient to meet the commonality

12

requirement of Rule 23(a) for purposes of a class-wide settlement of their claims.[2] *See, e.g.,*

*Wineland,* 267 F.R.D. at 674 (finding commonality for purposes of class-wide settlement based

on allegations that plaintiffs worked "off the clock" and were not properly compensated for all

hours worked); *Risch I,* 2012 WL 3242099 at *1 (finding commonality for purposes of class-

wide settlement based on allegations that were not paid overtime for all hours worked).

    C.    <u>Typicality</u>

    Plaintiffs' claims likewise satisfy the typicality requirement of Rule 23(a) for settlement

purposes.  "This requirement is generally considered to be satisfied 'if the claims or defenses of

the representatives and the members of the class stem from a single event or are based on the

same legal or remedial theory."  *Paxton,* 688 F.2d at 561-62; *see also, e.g., Alpern v. UtiliCorp*

*United, Inc.,* 84 F.3d 1525, 1540 (8th Cir. 1996) (typicality met where there are "other members

of the class who have the same or similar grievances as the plaintiff").

    The common questions raised by plaintiffs' claims also satisfy the typicality requirement

for purposes of the parties' settlement.  *See, e.g., Wineland,* 267 F.R.D. at 674 ("typicality is

closely related to commonality and 'a finding of one generally compels a finding of the other'")

(internal citations omitted).  Other courts approving class-wide settlements in wage-and-hour

lawsuits have concluded that typicality is met where the plaintiffs "allege that they were injured

by Defendants'… improperly calculating and compensated employees for all hours worked."

*Id.; see also Risch I,* 2012 WL 3242099 at *1.  These same allegations are made here.  (*See* Dkt.

No. 1 ¶¶ 14-18.)

---

    [2] Defendant does not concede that class treatment would be appropriate if plaintiffs
proceeded with their claims to trial.  However, "[b]ecause the class sought to be certified is for
settlement purposes only, the Court need not concern itself with questions of manageability that
would arise were this action to proceed in litigation." *Wineland*, 267 F.R.D. at 675 (citations
omitted).

D.      Adequacy Of Representation

Plaintiffs also meet Rule 23(a)'s requirement that they adequately represent the interests of the settlement class.  Adequacy is met if: (1) the class representatives have common interests with the members of the class; and (2) the class representatives will vigorously prosecute the interests of the class through qualified counsel.  *See, e.g., Paxton,* 688 F.2d at 562-63.

The representative plaintiffs' interests are consistent with those of the class.  Both the named plaintiffs and the class members worked in the position of cyber sales representative during the relevant period.  Plaintiffs' allegation that cyber sales representatives were denied overtime pay does not conflict with the interests of other class members—to the extent other cyber sales representatives also were denied overtime pay, they also share an interest in obtaining relief.  (Braziel Decl. ¶ 23.)  The named plaintiffs also have demonstrated that they will vigorously prosecute the claims of the absent class members.  Plaintiffs have pursued their claims for more than two years on behalf of both the FLSA and Rule 23 Subclasses, appearing for deposition and providing testimony and evidence to support the claims of the class.  (Braziel Decl. ¶ 23.)

Plaintiffs' counsel also has shown that it will adequately represent the interests of the class.  Plaintiffs' counsel are experienced wage-and-hour attorneys that have litigated hundreds of similar overtime claims in this district and elsewhere across the country.  (Braziel Decl. ¶¶ 1-9.)  Plaintiffs and their counsel have vigorously prosecuted plaintiffs' claims for nearly two years, and will continue to vigorously represent the interests of the two subclasses through the settlement process.

E.      Requirements Of Rule 23(b)(3)

Under Rule 23(b)(3), a class may be certified if:

14

> [T]he court finds that the questions of law and fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The parties submit that common issues of law and fact predominate over any individual issues for purposes of this settlement.

Plaintiffs have submitted evidence that defendant failed to pay cyber sales representatives for certain pre- and post-shift work, and that this additional work would have resulted in overtime compensation for class members.  (*See* Dkt. No. 25, Exs. 1-8.)  Other district courts have held that such evidence is sufficient to meet the predominance requirement of Rule 23(b)(3).  *See Wineland,* 267 F.R.D. at 675 (finding that allegations that "Defendants had a policy and practice of failing to properly document and compensate [employee's] for all hours worked" would predominate over individual issues and be subject to generalized proof).

A class action also is "superior to other available methods for the fair and efficient settlement" of this litigation.  Resolving plaintiffs' claims in a single settlement is preferable to hundreds of individual adjudications particularly where, as here, the statute of limitations on individual claims will continue to run if the case is dismissed and a class is not certified. *Wineland,* 267 F.R.D. at 675.  Moreover, "[b]ecause the class sought to be certified is for settlement purposes only, the Court need not concern itself with the questions of manageability that would arise were this action to proceed in litigation."  *Id*.  The proposed settlement class thus meets the requirements for certification under Rule 23(b)(3).[3]

---

[3] Rule 23(b)(3) also identifies four "matters pertinent to [the] findings" of predominance and superiority: (1) the class members' interests in controlling the prosecution or defense of separate actions; (2) the extent of any related litigation already begun by putative class members; (3) the desirability of concentrating the litigation in a single forum; and (4) the likely difficulties in managing the class action.  Fed. R. Civ. P. 23(b)(3).  The final factor is not relevant when evaluating class certification in the settlement context; however, the remaining factors further

F.      Plaintiffs' Counsel Should Be Appointed Class Counsel

Rule 23 (g) requires the court to consider the following when appointing class counsel:

(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) other resources that counsel will commit to representing the class;… [and whether they] fairly and adequately represent the interests of the class.

Fed. R. Civ. P. 23(g)(a)(A), (B).  Each of these factors favors the appointment of plaintiffs' counsel as class counsel here.

As discussed above, plaintiffs' counsel have extensive experience litigating the very type of class action wage-and-hour claims advanced in this action.  (Braziel Decl. ¶¶ 1-9, 24.)  They have devoted substantial time and resources to the investigation and prosecution of this action, which was filed in June 2011.  (*Id.*)  Their firms also possess the resources and expertise to aggressively protect the interests of the class in this action.  (*Id.*)  Thus, plaintiffs' counsel should be appointed as counsel for the class.

G.      The Proposed Notice Should Be Approved

Rule 23(e) requires that the district court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement. "There are no rigid rules to determine whether a settlement notice to a class satisfies the constitutional or Rule 23(e) requirements."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 114 (2d Cir. 2005).  Rather, notice to class members

---

support certification of the settlement class.  Class members have not demonstrated any interest in controlling the prosecution of these claims in separate actions, as the parties are not aware of any other actions that have been initiated by class members regarding the claims made here, and thus there is no concern that certification of this settlement class will interfere with any other related litigation.  (Braziel Decl. ¶ 25.)  Consolidation of these claims in the Eastern District of Missouri also is appropriate because plaintiffs' claims are confined to employees in SWBYP's St. Louis and Olivette call centers.

must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950); *see also, e.g., Crum v. Vincent,* 493 F.3d 988, 993 (8th Cir. 2007). The notice need contain only "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt-out or remain a member of the class." *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir. 1977).

The proposed notice, attached hereto as Exhibit B to the Settlement Agreement, satisfies these requirements.  The notice informs all class members of the material settlement terms, including their right to opt-out of the class and the consequences of doing so.  (*Id.)*  The notice also provides information on what class members will give up if they remain in the class and outlines the right to file objections to the settlement.  (*Id.*)  If any class members have further questions that are not answered by the notice, the notice provides them with class counsel's contact information.  (*Id.*)

The distribution of the notice under the proposed settlement also is reasonable.  Notice will be distributed by first class mail to all class members. (Braziel Decl. ¶ 17.)  Mailing addresses will be provided by SWBYP based upon the last known address of each class member in the company's payroll system.

(*Id.*); *see, e.g., Grunin v. Int'l House of Pancakes,* 513 F.2d 114 (8th Cir. 1975) (mailing of notice to class members' last known address is reasonable).  The settlement agreement includes processes for identifying updated address information in the event mail to these addresses is returned as undeliverable.  (*Id.*) Class members will have 45 days to file their objections to the agreement or opt-out of the settlement, a period of time that courts have routinely found to be reasonable in class settlements.  *See, e.g., Risch II,* 2012 WL 4357953 at *1-2 (approving class settlement agreement following notice period less than 45 days). Class members who do not object or opt-out of the settlement will have 60 days to return their claim form.  (Braziel Decl. ¶ 17.)  In addition to these class notices, SWBYP will provide notice of the proposed settlement to the proper state and federal officials as required under the Class Action Fairness Act, 28 U.S.C. § 1715.

The parties will file a motion for final approval within 30 days after the period for filing objections has expired.  The parties request that, as soon as practicable thereafter (but not less than 100 days after entry of an order granting preliminary approval to comply with the requirements of 28 U.S.C. § 1715), the Court hold a hearing for the purposes of determining whether to grant final approval of the settlement.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, the parties respectfully request that the Court: (1) grant their motion for preliminary approval of the settlement agreement; (2) approve the form and manner of the notice and claim form proposed by the parties; (3) appoint plaintiffs' counsel as Class Counsel pursuant to Fed. R. Civ. P. 23(g); and (4) conditionally certify the proposed settlement class.

Dated: March 25, 2013                                 Respectfully submitted,


                                                      /s/ J. Derek Braziel
                                                      J. Derek Braziel
                                                      LEE & BRAZIEL, LLP
                                                      1801 N. Lamar Street, Suite 325
                                                      Dallas, TX 75202
                                                      Telephone: (214) 749-1400
                                                      Facsimile: (214) 749-1010
                                                      www.overtimelawyer.com

                                                      Rowdy B. Meeks
                                                      ROWDY MEEKS LEGAL GROUP LLC
                                                      435 Nichols Rd., Suite 200
                                                      Kansas City, Missouri 64112
                                                      Telephone: (816) 977-2741
                                                      Facsimile: (816) 875-5069
                                                      Rowdy.Meeks@rmlegalgroup.com

                                                      ATTORNEYS FOR PLAINTIFFS



                                                      /s/ Nathan J. Oleson
                                                      Kimberly A. Yates (#49879 MO)
                                                      LITTLER MENDELSON
                                                      211 North Broadway, Suite 1500
                                                      St. Louis, MO 63102
                                                      Telephone: (314) 659-2000
                                                      Facsimile: (314) 659-2099
                                                      kyates@littler.com

                                                      Richard N. Appel (*pro hac vice*)

Joel M. Cohn (*pro hac vice*)
Nathan J. Oleson (*pro hac vice*)
Kelly M. Scindian (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD
LLP
1333 New Hampshire Avenue NW
Washington, DC 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
rappel@akingump.com
jcohn@akingump.com
noleson@akingump.com
kscindian@akingump.com

ATTORNEYS FOR DEFENDANT
SOUTHWESTERN BELL YELLOW PAGES

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing

MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR

PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND

CERTIFICATION OF SETTLEMENT CLASS PURSUANT TO FED. R. CIV. P.

23(E) was served by electronic filing through the use of CM/ECF this 25th day of

March, 2013, upon all counsel of record.


/s/ J. Derek Braziel
J. Derek Braziel